ADELLA B. GARDNER v. GEORGE B. WARREN, JR., JOHN A.
MANNING AND JOHN B. PIERSON, EXECUTORS,
LYMAN D. NORRIS ET. AL.

*Cloud on title.*

A decree compelling a release by executors was sustained by a divided
court where one of two joint-owners, acting with the other's verbal
authority, had made a contract of sale the terms of which, after
various transfers, had been fulfilled, but where the executors and
legal representatives of the other joint owner, who had died mean-
while, claimed to retain their decedents' original interest.

Appeal from Mecosta. (Fuller, J.) Oct. 23.—Dec. 21.

BILL to compel release of claims against realty. Defend-
ants appeal. Affirmed.

*E. A. Maher* for complainant.

*Norris & Uhl* for defendants appellant.

SHERWOOD, J. The bill in this case is filed to compel a
release by the executors and Lyman D. Norris, of their
interest in the north half of lot 14 in block 7 of Warren
and Bronson's second subdivision of the city of Big Rapids.
Separate demurrers were filed by the executors and the
defendant Norris; and the demurrers having been over-
ruled the bill was taken as confessed by all the defendants;
and the circuit judge after the hearing decreed to the
complainant the relief prayed in her bill. From that de-
cree the executors and the defendant Norris took an appeal
to this Court.

The complainant shows by her bill that in 1867 George
B. Warren, whose residence was at Troy, New York, and
Chauncy P. Ives owned in common a tract of land in the
city of Big Rapids, including said lot 14, Warren owning
two-thirds and Ives owning the other one-third of the
same; that on the 16th day of October, 1867, Ives conveyed

his one-third interest in the said lands to Stephen Bronson,. of Big Rapids, and after the purchase by Bronson he agreed with Warren that they would sell said lands to persons who should desire to purchase, and give their joint executory contracts on such sales when made; and it was further understood between them, and in pursuance of such understanding, Warren directed Bronson to sign and execute such contracts on his behalf, as he might deem for the best interests of the parties; that a large number of sales of lots were thus made by Bronson for himself and said Warren, he acting as the agent in making the same for Warren; and that among the sales made and contracts given was one to William T. Latham, of the north half of lot 14, it being the lot in question. It was made on the 1st day of March, 1871. By the terms of this contract, Latham was to have immediate possession of the premises. Upon the execution thereof he took such possession and made valuable and permanent improvements thereon. He was to pay $300 for the parcel ($125 at date of contract, and the remainder in three equal annual payments thereafter, with annual interest at ten per cent.); and Warren and Bronson, on receiving full payment of the purchase price and interest, were to execute to Latham a good and sufficient warranty deed of the premises. The terms of the contract were to apply to the heirs and assigns of the parties. Warren's name was signed by Bronson.

On the 15th day of June, 1872, Latham sold the lot and all his interest therein under his contract with Warren and Bronson to Elwood Graham, who took possession of the lot and made valuable, expensive and permanent improvements thereon.

The bill further avers that Stephen Bronson, on the 2d day of October, 1872, conveyed his interest in the lot to the Big Rapids Improvement & Manufacturing Company, and that such conveyance was with the full knowledge and consent of George B. Warren, and under an agreement with him that all of the contracts executed by Bronson for himself and Warren, including the contract with Latham,

should have full force and effect by all parties interested therein, as the joint contract of said Warren and said company; that all the terms and conditions of the Latham contract were fully performed on or about the 7th day of December, 1874, by paying all principal and interest accrued thereon to Warren and the company.

It further appears by said bill that said Company did, on or about the 16th day of August, 1875, convey its undivided one-third of said lot to said Elwood Graham, who then held the interest of said Latham in the contract for the purchase of said lot; that Elwood Graham entered into possession of said lot, and so continued until about the 20th of January, 1880, when he sold the same to Ursula Graham, and she immediately took possession thereof under said sale and made valuable and permanent improvements thereon; that on the 17th day of August, 1882, Ursula Graham sold and conveyed the premises to the complainant, and that she went into possession of the lot, and was so in possession at the time of filing her bill of complaint, and she avers she is the equitable owner thereof.

It is further stated in the bill that George B. Warren, on the 8th day of May, 1879, died, leaving a last will, and that defendants, George B. Warren, John A. Manning and John B. Pierson were appointed executors, and received their letters from the judge of probate July 9, 1879; and that they qualified and entered upon the discharge of their duties as such; that the deceased devised all his real estate interests to his executors in trust for certain purposes, and that the said George B. Warren, Jr., Emily Warren, Charles S. Warren, John E. Warren and Mary Manning are the beneficiaries under the declaration of trust in the will, so far as relates to the real estate; that said executors claim to own in fee the undivided two-thirds of said lot, and threaten to dispossess complainant by taking legal proceedings.

The bill further avers that on the 16th day of October, 1867, Bronson gave a mortgage to Ives upon his interest in the property purchased, which mortgage covered the east tier of lots in block seven, the same being numbered from

9 to 16; that on the 15th of July, 1869, said Ives released, among others, lot 14 from the operation of said mortgage; that on September 1st, 1875, George B. Warren became the owner of the mortgage and debt secured thereby, and subsequently commenced a foreclosure of the same, and in describing the property in the bill of complaint, excepted out-lot 14; that said foreclosure was completed after Warren's death by his executor, and that on or about June 20, 1880, a sale was made thereunder of the mortgaged property, said defendant Lyman D. Norris being the purchaser thereof; that said Norris claims no beneficial interest in the premises purchased by him on said sale, but claims to hold the title to the same in trust for the estate of George B. Warren. The bill further charges that said Norris claims that under and by virtue of his purchase at said mortgage sale he has an interest in an undivided one-third part of the north half of lot 14; and that such claim is a fraud upon complainant and a cloud upon her title. Complainant further claims she has requested said defendant Norris and said executors to release to her their claims upon said premises, and they refused so to do.

The defendants who have appeared rely in this court upon the points made in their demurrers to sustain their defense.

It will be noticed that the complainant does not ask that defendants be decreed to give a deed with warranty, but simply a quitclaim or release of their interest; and it is difficult to see why the case made by the bill is not an equitable one and one entitling complainant to the relief she prays. It is said complainant does not seek a conveyance to her of the land, but only a release of defendants' claim thereto. The bill states the claim made by defendants is, by defendant Norris, the title to one-third of the lot; and by the executors, the title to the other two-thirds. Such a claim under our statute [How. St. § 5653] can be released only by deed.

The relief prayed is not inconsistent with the facts stated in the bill; neither is it contrary to the practice of a court of chancery, upon the facts stated, to grant relief.

The company conveyed to Latham's assignee the interest transferred to it by Bronson, as it was equitably required to do, and as it had promised to do in pursuance of the arrangement between Bronson and Warren, when the company bought the property, and it was a fraud upon the rights of the complainant, who is assignee of Latham, when the representatives of the Warren interest refused to fulfill Warren's agreement to convey. It appears he, as well as the company, had received the consideration paid by the complainant and her assignors for the lot. She held the equitable interest in the premises, was in possession of the property under her equitable interest, and was entitled to have from the defendants the evidence of her legal title. But instead of receiving it when she made her request, the defendants not only refused to make it to her, but actually denied her right thereto, claiming to be themselves owners of the property.

The statements in the bill relating to the mortgage sale and the interest purchased by Norris show a claim made to the property in question without any sufficient foundation. We see no difficulty, under the facts stated in the bill, in bringing the case within a very familiar and well-recognized head of equity jurisdiction. The fraud charged is alone sufficient upon this point.

It is claimed here that Bronson was not legally authorized to make the Latham contract for Warren. This objection comes entirely too late. Equity will not allow a party to receive the full benefit of a contract made by another for him, and then permit him to repudiate the contract thus made. It appears from the bill that Warren not only knew all about the contract made, but had verbally authorized Bronson to make it; had recognized it as his arrangement with the company, and had actually taken all the benefit he could derive from it. It nowhere appears he ever repudiated the contract while living, and his executors cannot be permitted to do it now that he is dead.

The case as stated in the bill does not fall within the Statute of Frauds referred to by counsel. We think the

bill sufficiently avers possession in plaintiff at the time of commencing the suit ; that the bill is sufficiently specific in all its material averments, and is not subject to the infirmities specified in the demurrers.

The decree of the circuit court must be affirmed with costs.

CAMPBELL J. concurred.

GRAVES, C. J.  I am not able to concur in this opinion.

COOLEY, J.  I think there was a fatal defect of parties in this case, but as the decree must stand affirmed I do not deem it necessary to comment on the case.